**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KEYRON JACKSON,

                              Plaintiff,

    - v -                                    Civ. No. 9:09-CV-249
                                               (FJS/RFT)

JAMES A. BAKER, *Sergeant, Clinton Correctional Facility*, *et al.*,

                              Defendants.

**APPEARANCES:**                                   **OF COUNSEL:**

KEYRON JACKSON
02-A-5149
Plaintiff, *Pro Se*
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. ANDREW M. CUOMO                     CHRISTOPHER W. HALL, ESQ.
Attorney General of the State of New York       Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

      *Pro se* Plaintiff Keyron Jackson brought this civil rights Complaint, pursuant to 42 U.S.C. § 1983, claiming that all the Defendants violated his Eighth Amendment rights when they assaulted him. *See generally* Dkt. No. 1, Compl. Plaintiff further accuses Defendant Sergeant Baker of failing to protect him from the assault. *Id*. Presently before the Court is Defendants' Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, on the sole basis of Plaintiff's purported failure to exhaust his available administrative remedies. Dkt. No. 36. Plaintiff opposes the Motion.

Dkt. No. 39. For the reasons that follow, it is recommended that Defendants' Motion be **denied** and this case be deemed trial ready.

## I.  UNCONTESTED MATERIAL FACTS

**December 4, 2008 Incident**

Though the Defendants do not move for summary judgment as to the substantive Eighth Amendment claims set forth by Plaintiff, they provide extensive facts regarding the December 4th incident, to which they assert "no genuine issue exists."[1] We provide these uncontested facts as a backdrop for the contested issue of Plaintiff's efforts to exhaust his available administrative remedies.

At all times relevant to the events alleged in the Complaint, Plaintiff was a prisoner in the custody of the New York State Department of Correctional Services. Dkt. No. 36-1, Defs.' Statement of Material Facts (hereinafter "Defs.' 7.1 Statement") at ¶ 1. On December 4, 2008, Jackson was housed in Clinton Correctional Facility and was in the north yard when an inmate slashed his cheek from behind. *Id*. at ¶ 2. In response, Plaintiff rushed a group of inmates and started fighting. *Id*. at ¶ 3. As officers entered the yard in an attempt to restore order, Plaintiff tried to throw a garbage can at the inmates, however, he slipped and fell. *Id*. at ¶ 4. When he stood up, officers handcuffed him behind his back and then hit his legs with batons. *Id*. at ¶¶ 5 & 8. Plaintiff claims that while on the ground, Defendant Correction Officer Robert Ashley yelled at him because he believed Plaintiff intended to throw the garbage can at him. *Id*. at ¶ 6. After two minutes on the

---

[1] Most of the material facts included in Defendants' Statement of Material Facts (7.1 Statement) are followed by citations to the Plaintiff's Deposition testimony, which Defendants have apparently adopted as true. *See generally* Dkt. No. 36-1, Defs.' 7.1 Statement. Similarly, Plaintiff admits virtually all of the facts Defendants contend are material and uncontested. Dkt. No. 39 at p. 2, Pl.'s 7.1 Statement (noting a disagreement with only eight of the fifty-one paragraphs included in Defendants' 7.1 Statement).

ground, Plaintiff got up and five or six officers escorted him out of the yard and into the prison. *Id.* at ¶¶ 7 & 10. Each of the Defendants was a member of the escort. *Id.* at ¶ 11. En route to the infirmary, the escorting officers apparently attacked Plaintiff. *Id.* at ¶ 12. Officer Ashley choked Plaintiff and verbally threatened him. *Id.* at ¶ 13. The officers then pushed Plaintiff's face first into the wall, causing a gash to his right eyelid. *Id.* at ¶ 14. Plaintiff was choked again until he passed out and fell onto the floor. *Id.* at ¶¶ 15-16. When he regained consciousness, the officers punched and kicked Plaintiff in the body and head. *Id.* at ¶ 16. Plaintiff was then pulled up to a standing position and was punched several more times. *Id.* at ¶ 18. Each Defendant Officer participated in this assault; all the while, Plaintiff said nothing. *Id.* at ¶¶ 17 & 19.

Thereafter, Plaintiff was escorted to the infirmary and placed in an examination room. *Id.* at ¶ 20. The officers then ordered the nurses out of the room. *Id.* at ¶ 21. Plaintiff was made to stand against a wall where he was beaten again. *Id.* at ¶ 22. The escorting officers punched Plaintiff in the head, pulled his hair, pushed his face into the wall, and cursed at him. *Id.* at ¶ 23. Other officers entered the room and joined in punching Plaintiff. *Id.* at ¶ 24. Then, the officers forced Plaintiff to the floor, ripped his clothes off, and stepped on him. *Id.* at ¶ 25. When the beatings ceased, Plaintiff saw that supervisors were present in the room, including Sergeant Baker, whom Plaintiff believes was the only supervisor to have actively participated in the beatings. *Id.* at ¶¶ 26-28. Plaintiff was later examined in conjunction with the execution of a use of force medical report, which indicated the extent of Plaintiff's injuries as a laceration on his left cheek, a laceration on the upper eyelid, and a superficial abrasion to the left forehead. *Id.* at ¶ 29. Plaintiff also claims to have suffered bruises on his legs. *Id.* at ¶ 30.

**Exhaustion**

The facts regarding Plaintiff's efforts to exhaust his available administrative remedies are not as clear cut as those facts cited above. Plaintiff testified at his Deposition that on December 10, 2008, six days after the attacks from other inmates and then the officers, he wrote and submitted two grievances, which he placed in the inmate mailbox on his cellblock. Defs.' 7.1 Statement at ¶¶ 31-32. The first grievance was received by the Inmate Grievance Office on December 15, 2008, and received the filing number "CL 58316-08". *Id.* at ¶ 33; *see also* Dkt. No. 36-3, Tara Brousseau Aff., dated Dec. 15, 2009, Ex. A. In this grievance, Plaintiff complained that an officer, who previously warned Plaintiff that he would be cut by another inmate, failed to protect him from such attack.[2] Defs.' 7.1 Statement at ¶ 34. In the second grievance, Plaintiff complained of the December 4th beatings by the Defendants. *Id.* at ¶ 35. This latter grievance never received a filing number, which the Defendants proclaim is evidence of it having never been received by the grievance office. *Id.* at ¶ 36. On or about February 5, 2009, Plaintiff was transferred to Southport Correctional Facility. *Id.* at ¶ 38. As of that date, he was aware that his second grievance, concerning the subject matter of the instant Complaint, had never been addressed. *Id.* at ¶ 37.

Throughout the discovery phase of this litigation, several letters were produced to Defendants regarding Plaintiff's alleged efforts to inquire into the status of both grievances. *Id.* at ¶ 39; Dkt. No. 36-8, Christopher W. Hall, Esq., Affirm., dated Jan. 4, 2010, Ex. B; Brousseau Aff. at ¶ 32 & Exs. G-K. Tara Brousseau, Inmate Grievance Program Supervisor at Clinton, states that there is no record of Plaintiff having filed a grievance or other correspondence regarding the altercation with the officers. Brousseau Aff. at ¶¶ 24, 34, 39, & 44. Plaintiff maintains that his mail

---

[2] The allegation that an unnamed officer failed to protect Plaintiff from an inmate attack is not part of this litigation.

was tampered with during his stay at Clinton and that he never received responses to either of the grievances he penned on December 10th. Dkt. No. 39, Keyron Jackson Aff., dated Feb. 18, 2010, at ¶ 4; Dkt. No. 36-7, Hall Affirm., Ex. A, Keyron Jackson Dep., dated Aug. 20, 2009, at pp. 86-87. Nevertheless, he claims to have written several follow-up letters to the IGRC and Superintendent Artus. Jackson Aff. at ¶¶ 4-5. Such documents include:[3]

- Grievance, dated December 10, 2008, regarding December 4th officer assault (Dkt. No. 36-8 at p. 8);
- Letter, dated December 26, 2008, from Jackson to Superintendent Artus, seeking to appeal officer assault grievance, for which he received no number nor response (Dkt. No. 36-8 at p. 7);
- Letter, dated December 26, 2008, from Jackson to Superintendent Artus, asking for discretionary review of an assault on staff charge, for which he was apparently found guilty, and specifically referencing the December 4th officer assault (Dkt. No. 39-1 at p. 41);
- Letter, dated January 8, 2009, from Jackson to Superintendent Artus, asking for discretionary review of assault on staff charge, noting it is his second letter, and further detailing the December 4th officer assault (Dkt. No. 39-1 at p. 45);[4]
- Letter, dated January 28, 2009, from Jackson to the Clinton Grievance Clerk, inquiring into the status of the second grievance filed on December 10, 2008, for which he received no number nor response, and requesting an appeal to the Central Office Review Committee (CORC) (Dkt. No. 36-8 at p. 5);
- Letter, dated January 29, 2009, from Jackson to Superintendent Artus, inquiring into the status of the second grievance filed on December 10, 2008, for which he received no number nor response (Dkt. No. 36-8 at p. 6);

---

[3] The following documents were sent by Plaintiff to Defendants' counsel in response to certain discovery requests made during Plaintiff's Deposition. Plaintiff and Defendants submit the documents as evidence in support of there respective stances on the dispositive Motion before this Court. *See* Dkt. No. 36-8, Christopher W. Hall, Esq., Affirm., dated Jan. 4, 2010, Ex. B; Dkt. No. 39-1, Keyron Jackson Aff., dated Feb. 18, 2010, Exs.

[4] It appears this letter was marked "Received," but the date is indecipherable.

- Letter, dated January 31, 2009, from Jackson's fiancée, Neazan Aulder, asking whether Clinton officials received a letter from Jackson regarding an unspecified assault (Dkt. No. 36-8 at p. 2);
- Letter, dated February 24, 2009, from Jackson to the Clinton Grievance Supervisor, regarding an unanswered grievance filed on December 10, 2008, which was not assigned any number (Dkt. No. 36-8 at p. 4).

## II. DISCUSSION

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing [that there is] a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.

*Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B.  Exhaustion of Available Administrative Remedies

The Prison Litigation Reform Act of 1996 ("PLRA") imposes several restrictive conditions on the ability of prisoners to maintain federal civil rights actions. The PLRA provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court dictates that this "requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Prior to bringing

suit in federal court, a prisoner must exhaust those administrative remedies that are available to him. *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006).

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Review Committee ("IGRC"), a committee comprised of both inmates and facility employees.[5] N.Y. COMP. CODES R. & REGS. tit. 7, §§ 701.5(a) - (b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id*. Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRCs determination and issues a decision. *Id*. at § 701.5(c). Finally, if the superintendent's decision is appealed, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing *Sulton v. Greiner*, 2000 WL 1809284, at *3 (S.D.N.Y. Dec.11, 2000)); *Petit v. Bender*, 2000 WL 303280, at *2-3 (S.D.N.Y. Mar. 22, 2000).

Exhaustion of administrative remedies under the PLRA is an affirmative defense which must be raised by the defendants. *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Once raised, the defendants bear the burden of proving that administrative remedies have not been exhausted. *Howard v. Goord*, 1999 WL 1288679, at * 3 (E.D.N.Y. Dec. 28, 1999) (citations omitted). The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id.* (citations omitted).

The Second Circuit has proposed a three-step inquiry courts should undertake when an

---

[5] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member or volunteer). N.Y. COMP. CODES R. & REGS tit. 7, § 701.4(a).

inmate opposes an assertion that he did not fully exhaust his administrative remedies. First, a court must determine whether administrative remedies were, in fact, "available" to the prisoner. *Abney v. McGinnis*, 380 F.3d 663, 667-68 (2d Cir. 2004). Next, the court must inquire whether defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it. *Johnson v. Testman*, 380 F.3d 691, 695 (2d. Cir. 2004). Defendants may also be estopped from raising failure to exhaust if their own actions inhibited the inmate's ability to exhaust. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). Finally, if the court finds that remedies were available, defendants are not estopped and have not forfeited the non-exhaustion defense, and that plaintiff failed to exhaust such remedies, the court must consider whether "special circumstances" have been raised that justify "the prisoner's failure to comply with administrative procedural requirements." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citation omitted).

First, we must decide whether administrative remedies were available to the prisoner. "'Available' means more than the mere presence of a grievance system but also that the system is functionally available to the prisoner." *Shaheen v. Hollins*, 2005 WL 2179400, at *3 (N.D.N.Y. Sept. 7, 2005) (citing *Hemphill v. New York*, 380 F.3d 680, 686-87 (2d Cir. 2004) ("[I]n some circumstances, the behavior of the defendants may render administrative remedies unavailable.")). The "proper test for determining whether ordinary grievance procedures were 'available' [is] whether 'a similarly situated individual of ordinary firmness [would] have deemed them available.'" *McCullough v. Burroughs*, 2005 WL 3164248, at *3 (E.D.N.Y. Nov. 29, 2005) (quoting *Hemphill v. New York*, 380 F.3d at 688).

There is no dispute that Clinton had a formal (and, for certain categories of complaints, an informal) grievance system in place, which Plaintiff had previously taken advantage of. Brouseeau

Aff. at ¶¶ 13-16, 26, & Ex. F. Thus, technically, administrative remedies were available to Plaintiff. However, Plaintiff neither denies the existence of administrative remedies nor that he misunderstood how the process works. *See, e.g.*, *Miller v. Bailey*, 2008 WL 1787692, *5 (E.D.N.Y. Apr. 17, 2008) (noting that the plaintiff's misunderstanding of the grievance procedure did not render his administrative remedies unavailable.) In fact, Jackson asserts that he followed the correct procedures and that his mail was tampered with during his stay at Clinton; he attributes the mail tampering as the reason for his failure to receive responses to his grievances and follow-up letters. Dkt. No. 39, Keyron Jackson Aff., dated Feb. 18, 2010, at ¶ 4. Implicit in this accusation is the notion that officers sought to cover up the assault and therefore interfered with his mail relating to this incident, while allowing other non-incident related mail to pass through. Dkt. No. 39, Pl.'s Mem. of Law at p. 8 ("[P]laintiff has provided a motive for defendants' assault and conspiracy to cover up the excessive use of force."). No Defendant has offered an affidavit combating this accusation. Furthermore, in opposition to Defendants' request for dismissal, Jackson supplies the Court with his grievance concerning the officer assault as well as numerous letters inquiring into the status of the grievance. *See* Dkt. No. 39-1, Exs.; *see also supra* Part I. And, the letters of inquiry were not limited to the time in which he was housed at Clinton, since a few of the letters contain dates after his transfer to Southport. *Id*. Defendants submit these same letters, but only as a means of establishing their non-receipt. Because their records do not reflect receipt of these documents, they presume, and ask the Court to act in kind, that Plaintiff failed to exhaust his available administrative remedies.

At this stage, our role is not to credit one party's version over another. Were we to credit as true Plaintiff's version, it does seem that the alleged mail tampering and the failure to file his

letters could be viewed as rendering the administrative remedies unavailable. Such analysis would hold true for our second inquiry, that being whether Defendants are estopped from offering this affirmative defense. Indeed, several courts, including this one, have held that there are situations where the defendant may be estopped from asserting this affirmative defense. *Croswell v. McCoy*, 2003 WL 962534, at *4 (N.D.N.Y. Mar. 11, 2003) (Sharpe, M.J.) *aff'd in unpublished opinion* No. 01-CV-547, Dkt. No. 50 (Hurd, J.); *Heath v. Saddlemire*, 2002 WL 31242204, at *4-5 (N.D.N.Y. Oct. 7, 2002) (Scullin, C.J.) (affirming this Court's Report-Recommendation and Order in its entirety); *O'Connor v. Featherston*, 2002 WL 818085, at *2 (S.D.N.Y. Apr. 29, 2002) (collecting cases from various districts including the 5th and the 8th Circuit explicitly holding such exceptions to the PLRA exhaustion requirement). A prisoner may continue with suit despite nonexhaustion issues when

> (1) [the] inmate was led to believe by prison officials that his alleged incident was not a grievance matter and assured that his claims were otherwise investigated . . . (2) an inmate makes a reasonable attempt to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts . . . and (3) the state's time to respond to the grievance has expired.

*O'Connor v. Featherston*, 2002 WL 818085, at *2 (internal quotations and citations omitted).

Thus, were we to credit Plaintiff's version as true, it appears that Defendants could be estopped from raising this affirmative defense based on either their own actions in inhibiting receipt of Plaintiff's grievance and follow-up letters, or, at a minimum, we could find that Plaintiff made reasonable attempts to exhaust his administrative remedies, thus excusing his technical failure to exhaust prior to bringing suit. To reiterate, the Defendants do not counter Plaintiff's proof. Instead, they rely solely on the notion that because they have no record of receipt of the various documents, then Plaintiff must never have mailed them and therefore he failed to exhaust his available remedies.

*-11-*

Were we to credit the Defendants' position as true, it would seem possible that Plaintiff's written attempts to grieve the officer assault incident were merely doctored after the fact. In support of their theory of non-exhaustion, Defendants offer Tara Brousseau's Affidavit; in many respects, however, this Affidavit is conclusory. For example, she repeatedly states that she "reviewed [her] office grievance records and found no such document[s]" and therefore concludes that they were never sent to her office. Brousseau Aff. at ¶¶ 24, 31, 34, 37, 39, 42, 44, & 55. Yet, she does not describe how she conducted the search, i.e., whether a search beyond computerized records was completed, nor does she provide information on retention policies. *See Thomas v. New York State Dep't of Corr. Servs.*, 2002 WL 31164546, at \*3 (S.D.N.Y. Sept. 30, 2002) (denying defendants' motion for summary judgment on the issue of exhaustion where defendants provided a conclusory affidavit regarding a documentary search that allegedly failed to uncover documents supporting plaintiff's exhaustion efforts). In light of the competing arguments and evidence, it would be improper for this Court to gauge the credibility of any party or party's witness.

Therefore, based on the evidence presented by Plaintiff and Defendants, we find that an issue of material fact exists as to whether administrative remedies were available to Plaintiff and whether Defendants should be estopped from raising this defense based on their own actions or based upon Plaintiff's reasonable attempts to grieve this matter.[6]

### III. CONCLUSION

For the reasons stated herein, it is hereby

---

[6] As for Plaintiff's Eighth Amendment claims, the merits of which are not the subject of the present Motion, it appears that in their Statement of Material Facts, Defendants have stipulated to certain material facts. Because we were not asked to review the merits of Plaintiff's Eighth Amendment claims, we leave for the presiding Judge the decision as to whether the issue of liability is settled on such claims and therefore whether a trial should be confined to issues of fact regarding exhaustion and damages.

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 36) be **DENIED** and this case be deemed trial ready; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:  August 19, 2010
       Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge